UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MATTHEW MCBEE**, <br><br> Petitioner, <br> vs. <br><br> **ADAM DOUGLAS**, <br><br> Respondent. | **2:20-CV-12496-TGB-EAS** <br><br> HON. TERRENCE G. BERG <br><br> **OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF NOS. 1, 14),** <br><br> **DENYING A CERTIFICATE OF APPEALABILITY, AND** <br><br> **GRANTING PETITIONER LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL** |

This is a pro se habeas action brought by Petitioner Matthew McBee ("McBee"), a Michigan state prisoner seeking relief under 28 U.S.C. § 2254. McBee challenges his conviction of first-degree criminal sexual conduct ("CSC-I") following a jury trial in the Oakland County Circuit Court. McBee seeks habeas review on several bases: (1) prosecutorial misconduct, (2) juror misconduct, (3) improper witness vouching, (4) trial court error, and (5) ineffective assistance of appellate counsel. For the reasons set forth, the Court **DENIES** the habeas petition. The Court also **DENIES** a certificate of appealability and **GRANTS** leave to proceed in forma pauperis on appeal.

# I.   BACKGROUND

McBee's conviction arose from the sexual assault of his girlfriend's minor child in 2014. This Court recites the facts from the Michigan Court of Appeals' opinion affirming his conviction, presumed correct on habeas review. 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On the morning of January 8, 2014, seven-year-old HM told her mother, Heather Smith, that McBee—Smith's boyfriend—made her "drink his milk." HM also said something about magazines and pointed to a metal, clipboard-style container that was sitting on a nearby dog crate next to the stairs. Smith looked inside the container and discovered several pornographic magazines. Smith eventually learned that the encounter between HM and McBee occurred the day before.
>
> At trial, HM testified that on January 7, 2014, she was sitting on the living room couch while McBee played video games. Smith and HM's sister were asleep in their bedrooms. McBee paused his game and showed her pornographic magazines he retrieved from the clipboard-style container. McBee then made her put his "jina" in her mouth and "made me suck it, then—then the milk got in my mouth." HM explained that a "jina" was a "boy part" used for going to the bathroom. Later, she clarified that she used the terms "jina" and "peter" because she was not allowed to say "dick." According to HM, the milk made her sick and some of the milk got on the living room couch and on her dress.
>
> Smith called the police on January 8, 2014, after learning about HM's accusation. Several items were seized from the home, including a metal clipboard containing several pornographic magazines and the cushions from the two living

room couches. HM was examined at Beaumont Hospital; there were no obvious signs of trauma and HM's hymen appeared normal. Of the items submitted for forensic analysis, only three tested positive for the presence of body fluids: the underwear HM said she wearing at the time of the incident, a vulvar swab obtained during HM's vaginal examination, and the center cushion taken from one of McBee's couches. The DNA discovered on the vulvar swab and HM's underwear were consistent with her own DNA profile. A partial DNA profile was recovered from sperm cells found on the couch cushion and it matched McBee's DNA profile at four of the 16 locations typically tested. McBee's DNA profile could not be excluded at five additional locations.

HM was interviewed by Yvonne Cameron at CARE House of Oakland County on January 8, 2014. Defense witness Dr. Katherine Okla, an expert in forensic interviewing techniques, memory, and suggestibility, noted certain elements of the CARE House interview which she did not feel complied with Michigan's Forensic Interviewing Protocol and expressed concern that several elements of HM's story were still unclear after the interview. Dr. Okla observed that Cameron failed to ask sufficient follow-up questions to clarify some of HM's ambiguous statements and did not seem to engage in clear and explicit alternative hypothesis testing. Dr. Okla also opined that HM's memory might have been impacted by other experiences, including her repeated conversations with Smith earlier in the day, Smith's negative reaction to the disclosure, earlier discussions with family members about sexual touching, unrelated child protective services investigations, and the understanding that McBee would be incarcerated.

The prosecution's rebuttal witness, Sarah Visger Killips, was qualified as an expert in forensic interviewing, the dynamics of sexual abuse, and characteristics of children who allege sexual abuse. Killips agreed that one of the primary goals of forensic interviewing is to engage in "hypothesis testing,"

3

rather than "hypothesis confirming." Having reviewed HM's CARE House interview, Killips opined that several alternative hypotheses were, in fact, tested, though not always through direct questioning. Killips disagreed with Dr. Okla's suggestion that there was inadequate clarification with respect to source monitoring and whether HM was reporting things she had experienced, rather than things she had seen. Killips also disagreed with Dr. Okla's opinion regarding the likelihood that HM's memory was tainted by outside sources.

*People v. McBee*, No. 330048, 2017 WL 1929816, at *2 (Mich. Ct. App. May 9, 2017).

On September 29, 2014, the jury convicted McBee of CSC-I. On December 1, 2014, the trial court sentenced him to a prison term of 25 to 60 years. *See* ECF No. 21-15, PageID.1188.

McBee filed a claim of appeal in the Michigan Court of Appeals, raising claims concerning prosecutorial error, juror misconduct, witness vouching, separation of powers, and cruel and unusual punishment. McBee additionally filed his own pro se brief, known in Michigan as a Standard 4 Brief, which raised a claim concerning the improper admission of hearsay statements. ECF No. 20, PageID.276–77. On May 9, 2017, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming McBee's conviction and sentence. *McBee*, 2017 WL 1929816, at *10. McBee filed an application for leave to appeal in the Michigan Supreme Court, which was denied on the basis that the court "was not persuaded that the questions presented should be reviewed[.]" *People v. McBee*, 906 N.W.2d 777 (Mich. 2018).

4

On May 6, 2019, McBee filed a motion for relief from judgment in the state trial court, raising the following claims for relief:

I.    Failure to Remove Juror at Critical Stage of Trial.

II.   Jury Tainted by Prosecutor's Implication that Mr. McBee was a Drug Dealer.

ECF No. 21-18, PageID.1237–38. McBee also raised related ineffective assistance of trial and appellate counsel claims in his motion. *Id.* PageID.1239; Amended motion, ECF No. 21-19. On January 9, 2020, the trial court entered an opinion and order denying McBee's claims on the merits. *See* ECF No. 21-20.

McBee filed an application for leave to appeal in the Michigan Court of Appeals, which was denied on December 2, 2020 because McBee "failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 21-22, PageID.1532. McBee filed an application for leave to appeal in the Michigan Supreme Court, which the court similarly rejected because McBee "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. McBee*, 961 N.W.2d 169 (Mich. 2021).

During the pendency of exhausting his state-court remedies, McBee filed his Petition for a Writ of Habeas Corpus in this Court on September 3, 2020. ECF No. 1. Before the State was able to file a response to the Petition, McBee moved for a stay of his habeas case because he was pursuing post-conviction remedies in state court. ECF No. 7. On April 8,

2021, the late Honorable Arthur J. Tarnow, granted McBee's motion for a stay and administratively closed the case. ECF No. 10.

On March 14, 2022, McBee filed an amended habeas petition in this Court, which raises the following claims for relief:

I. Petitioner was denied his Sixth and Fourteenth Amendment Right to a fair trial when the prosecutor deliberately accused Petitioner of selling drugs. The state court's determination was objectively unreasonable, and contrary to United States Supreme Court precedent and § 2254(d)(1).

II. Petitioner was denied his Sixth Amendment right to a fair trial when the prosecution expert opined that the complainant was telling the truth, thereby improperly vouching for the child's credibility, and where trial counsel was ineffective for failing to object. The state court unreasonably concluded it was harmless error.

III. Petitioner was denied his Sixth and Fourteenth Amendment right[s] to a fair and impartial jury when Juror 14, i) was a co-worker of a Petitioner's witness, ii) discussed aspects of the trial with other co-workers prior to deliberation, and iii) was unable to ignore the statement regarding Petitioner selling drugs.

IV. The lower court erred when it failed to determine the depth of the acquaintance between Juror 14 and Petitioner's witness and failed to determine whether maintaining the juror on the panel would result in an unfair and [impartial] jury; trial counsel was ineffective for allowing the juror to remain on the panel without further inquiry and appellate counsel was ineffective for failing to raise the issue on direct appeal. U.S. Const., VI, XIV; Const., 1963, art 1, § 20.

6

V.  Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel on appeal that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

ECF No. 14, PageID.203.

This Court reopened the case on July 12, 2022. ECF No. 17. Respondent filed an answer to the Amended Petition. ECF No. 20. McBee filed a reply. ECF No. 22.

## II.   LEGAL STANDARD

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

7

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## III.   ANALYSIS

### A. Procedural Default

The Court notes preliminarily that although Respondent argues that some of McBee's claims of error are procedurally defaulted, it is not obligated to address that defense because procedural default is not a jurisdictional bar to review of the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits[.]") The Sixth Circuit notes its own decisions "may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207 (citing *Lambrix*, 520 U.S. at 525); *see also id.* (finding "resolution of the procedural issues …  not necessary [and] that the claim is better resolved on the merits"). The procedural default analysis will not affect the outcome of this case, and it is more efficient for the Court to proceed directly to the merits of McBee's claims.

### B. Prosecutorial Misconduct

McBee first argues that the prosecutor committed misconduct by accusing McBee of selling drugs during the cross-examination of a defense witness. ECF No. 14, PageID.218–22. During trial, defense witness Korey Eiermann testified that he was a childhood friend of

9

McBee's, and that he and his wife socialized with McBee and his family. ECF No. 21-12, PageID.985. On cross-examination, the prosecutor inquired further into Eiermann's relationship with McBee. She asked the following questions:

> THE PROSECUTOR: So the nature of the relationship was getting togther for the kids and friends, nothing else, correct?
>
> MR. EIERMAN: As far as I know.
>
> THE PROSECUTOR: Were you aware of text messages going back and forth between your wife and the Defendant and your wife is purchasing drugs from the Defendant?

ECF No. 21-12, PageID.991.

Defense counsel objected to the prosecution's question on grounds of relevancy and assuming facts not in evidence. *Id.* at PageID.991–92. Defense counsel then requested a mistrial because the question suggested that McBee engaged in uncharged criminal conduct, and the prosecutor could not "unring the bell" for the jury. *Id.* at PageID.993. The prosecutor argued that the question was asked for the proper purpose of impeaching the credibility of the witness. *Id.* at PageID.995. The trial court took the motion for a mistrial under advisement. *Id.* at PageID.997. When cross-examination resumed, the prosecutor did not resume that line of questioning. The motion was not addressed again until McBee's sentencing hearing when the trial court denied the motion. ECF No. 21-15, PageID.1185.

McBee now argues that the prosecutor's question prejudiced the jury and rendered his trial fundamentally unfair. The Michigan Court of Appeals rejected this claim on direct review, concluding, in relevant part, that:

> We agree with McBee's argument that the prosecution's question sought to illicit irrelevant—and, therefore, inadmissible—evidence. Despite the prosecution's arguments to the contrary, McBee's purported history of selling drugs to Eiermann's wife was not relevant for the purpose of impeaching Eiermann's credibility or rebutting McBee's accusation that Smith stole items from his house, including prescription medication. However, while we agree that the prosecution erred by asking this question of Eiermann, we do not believe that the error was so prejudicial that it deprived McBee of a fair and impartial trial.
>
> * * *
>
> McBee points to posttrial comments made by several jurors to demonstrate that he was unfairly prejudiced by the prosecution's question. However, McBee's assertion rests on the affidavit of his trial counsel, describing the jurors' comments. The affidavit does not adequately support his claim of error as it attempts to set forth inadmissible hearsay. Moreover, even if this Court were to consider the affidavit, its language is fairly ambiguous and does not demonstrate with any level of certainty that the commenting juror's opinion regarding McBee's guilt was swayed by the prosecution's question or that the remaining jurors were similarly affected.

*McBee*, 2017 WL 1929816, at *3–4.

The Michigan Court of Appeals' decision was neither an unreasonable application of federal law nor did it contravene clearly

11

established Supreme Court precedent or the facts. For a petitioner to be entitled to habeas relief based on prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis … is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway … in reaching outcomes in case-by-case determinations[.]'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

In this case, McBee has not shown that the prosecutor's conduct rendered his trial fundamentally unfair. While the Court defers to the state court's determination that the prosecutor's question was improper under the Michigan Rules Evidence, *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), even if the prosecutor erred, the trial court cured any potential prejudice by instructing the jury that counsel's questions are not evidence. ECF No. 21-13, PageID.1149. Jurors are presumed to follow

12

the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors … take an oath to follow the law as charged, and they are expected to follow it.").

The Michigan Court of Appeals also rejected McBee's argument that defense counsel's affidavit established that the improper question misled the jury. Defense counsel's affidavit avers that after the verdict, he spoke with the jury and "a juror commented on the 'drug sale' issue." ECF No. 21-22, PageID.1598–99. Two other jurors stated that they recalled the question, but did not consider it. *Id*. A female juror stated that she recalled the question but could not disregard that she heard it. *Id*. The Michigan Court of Appeals reasonably concluded that counsel's inadmissible hearsay testimony about jurors' statements was not properly before the court.

Further, to the extent that McBee claims that defense counsel's affidavit establishes that the jury was prejudiced by the prosecutor's question, the affidavit concerns evidence internal to the jury deliberations, which cannot be used to impeach a jury verdict. *See Tanner v. United States*, 483 U.S. 107, 119–21, (1987); *Williams v. Bagley*, 380 F.3d 932, 945 n.7 (6th Cir. 2004). "Where no extraneous influence is present, courts will not intrude into matters internal to jury deliberations." *Fletcher v. McKee*, 355 F. App'x 935, 937–38 (6th Cir. 2009); *see also United States v. Lloyd*, 462 F.3d 510, 518–19 (6th Cir. 2006) ("[T]he only aspect of deliberations a juror may testify about is

13

whether deliberations were influenced by extraneous influence or information."). For these reasons, the Michigan Court of Appeals did not unreasonably apply federal law by refusing to consider defense counsel's affidavit and denying Mcbee's claim. McBee is not entitled to relief on this claim.

### C. Improper Vouching

McBee's second habeas claim concerns the testimony of the prosecution's forensic interviewing expert, Sarah Killips. During trial, the prosecution offered Killips as a rebuttal witness for defense expert Dr. Katherine Okla. Dr. Okla's testimony primarily concerned the victim's CARE House interview and the deficiencies in following Michigan protocol and the interviewing techniques. The prosecution called Killips to opine on the integrity of the CARE House's forensic interviewing process.

McBee now argues that Killips improperly vouched for the victim's credibility in violation of his right to a fair trial and that defense counsel was ineffective for failing to object. He argues that Killips made multiple comments during her testimony that conveyed a belief that the victim was truthful and credible in her allegations. ECF No. 14, PageID.223. Specifically, Killips commented that: (1) "We are not hoping to do more damage than what has already happened;" ECF No. 21-13, PageID.1079, (2) that "each of those interviews is damaging in particular ways"; *id.* at PageID.1081, and (3) she had the following exchange with the prosecutor:

14

> THE PROSECUTOR: And so in a section of the forensic interview where [HM] is asked to consider the couch and the forensic interviewer was (inaudible) the couch and [HM] corrects her and says "No, ours is a brown one", is that helpful to you (inaudible) suggestibility or how suggestible [HM] is?
>
> MS. KILLIPS: Yes. It indicated that in that situation [HM] was able to say to this adult, authority figure, you're wrong and I feel comfortable telling you what my experience is.

*Id.* at PageID.1091.

The Michigan Court of Appeals rejected McBee's arguments on this issue on direct review, concluding that while the first two comments did not constitute vouching, Killips did explicitly convey her belief that the victim's disclosure was credible in her exchange with the prosecutor. However, the court concluded that it "appear[ed] that any prejudice that resulted from Killips's testimony was counteracted by Dr. Okla's contrary opinion." *McBee*, 2017 WL 1929816, at *7.

The Michigan Court of Appeals' decision did not contravene clearly established Supreme Court precedent. There is no clearly established Supreme Court precedent that prohibits an expert witness from providing this kind of testimony. *Montaldi v. Brown*, No. 22-1340, 2022 WL 14154228, at *3 (6th Cir. Aug. 22, 2022) ("[T]here is no clearly established Supreme Court case that prohibits states from admitting expert testimony that embraces an ultimate issue."); *see also Hoglund v. Neal*, 959 F.3d 819, 838 (7th Cir. 2020) (finding no clearly established Supreme Court precedent on expert vouching); *Cummings v. Rapelje*, No.

11-10003, 2016 WL 4191733, at *16 (E.D. Mich. Aug. 9, 2016) (Lawson, J.) ("[T]here is no federal law or rule that prevents one witness from 'vouching' for the credibility of another witness."). Absent such "clearly established Federal law," the state appellate court's denial of the claim cannot be an unreasonable application of federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (stating that where the Supreme Court's "cases give no clear answer to the question presented," a state court's decision cannot constitute an unreasonable application of clearly established Federal law). Accordingly, McBee's claim is not supported by clearly established Supreme Court law.

McBee also claims that defense counsel was ineffective for failing to object to the expert witness's testimony. The Michigan Court of Appeals rejected this argument as well, stating:

> Although Killips's testimony strayed into the realm of improper opinion regarding witness credibility, defense counsel did not render constitutionally deficient assistance by failing to object. When viewed in the context of rebutting Dr. Okla's expert opinion, Killips's statement was not so blatantly prejudicial to McBee that there could be no strategic reason for defense counsel's decision to refrain from objecting. Given the parallel nature of Dr. Okla's testimony, such an objection could have undercut the weight the jury afforded to Dr. Okla's favorable opinion. In any event, it is improbable that the outcome of the trial would have been different had defense counsel objected to Killips's single reference to an example of HM's lack of suggestibility. The reliability of the CARE House interview was examined at length, as was the impact that Cameron's interviewing techniques may have had on HM's disclosure. Additionally, HM reiterated her recollection of the

16

> January 7, 2014 incident at trial, thereby allowing the jury to form its own opinion regarding HM's credibility based on first-hand observations of her demeanor and manner of communicating.

*McBee*, 2017 WL 1929816, at *7.

The Michigan Court of Appeals' decision was neither an unreasonable application of federal law nor did it contravene clearly established Supreme Court precedent. On habeas corpus review, to prevail on an ineffective assistance of counsel claim, a petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at 687. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013).

The Michigan Court of Appeals' decision that counsel's failure to object was reasonable trial strategy is not contrary to, or an unreasonable

17

application of, *Strickland*. It is possible that an objection challenging Killips's testimony could have undercut the weight the jury afforded to Dr. Okla's opinion because she similarly commented on the victim's *lack* of credibility and her uncertainty during her CARE House interview. ECF No. 21-11, PageID.920. The Michigan Court of Appeals' application of *Strickland* was not unreasonable in this regard. Because McBee fails to show defense counsel's performance was deficient, the Court need not address the prejudice prong. *Strickland*, 466 U.S. at 697. McBee is not entitled to relief on this claim.

### D. Juror Misconduct

Next, McBee argues that he was denied the right to an impartial jury because one of the jurors was exposed to extraneous information not presented in evidence.

During trial, the defense called McBee's former girlfriend, Melissa Raderstorf, as a witness. After Raderstorf's testimony, a juror submitted a note to the trial court indicating that she recognized Raderstorf from her work at an elementary school and childcare facility, but did not know her by name. ECF No. 21-12, PageID.1049–51. Raderstorf also confirmed that she recognized the juror. *Id*. Upon the request of the parties, the trial court questioned the juror regarding whether her recognition of Raderstorf would affect her ability to remain impartial to which the juror responded, "No." *Id*. at PageID.1052. The court further inquired whether she would follow the court's instructions, which she responded, "Yes." *Id*.

18

After the jury render its verdict, the trial court held a hearing on McBee's motion for mistrial based in part on Raderstorf's affidavit stating that: "That while at work on September 26, 2014, I overheard two teachers discussing the trial; to wit, that one of the teachers had received a text message from one of the jurors with ties to the school and that the juror commented on the trial." ECF No. 21-21, PageID.1349. Defense counsel surmised that the juror who sent the text was the same juror who proclaimed to recognize Raderstorf. ECF No. 21-15, PageID.1181. The trial court denied the motion for mistrial without prejudice on the basis that it required better evidence than the hearsay contained in the affidavit. *Id.* at PageID.1185.

On direct appeal, McBee raised the claim that the trial court erred by denying the motion for mistrial on the basis of juror misconduct. The Michigan Court of Appeals rejected the argument in length, stating:

> As he did in the trial court, McBee maintains that he is entitled to a new trial due to juror misconduct. McBee bases this assertion solely on an affidavit provided by defense witness Melissa Raderstorf. In pertinent part, Raderstorf states: "That while at work on September 26, 2014, I overheard two teachers discussing the trial; to wit, that one of the teachers had received a text message from one of the jurors with ties to the school and that the juror commented on the trial." McBee's reliance on Raderstorf's affidavit is misplaced. Like the affidavit proffered by his trial counsel in support of his first claim of error, Raderstorf's affidavit contains inadmissible hearsay that will not be considered by this Court.

19

McBee's argument lacks merit in any event. Even if Raderstorf's affidavit was admissible, it would not satisfy McBee's burden of establishing the factual predicate for his claim of juror misconduct. Assuming, arguendo, that a juror communicated with a third-party in the manner asserted by Raderstorf, thereby violating the trial court's instruction against discussing the case with friends or family, there is no proof that the jury was exposed to extraneous information by that juror's misconduct. Raderstorf claims that her coworker received a text message from a juror—not that the juror received outside information from the coworker. In the absence of evidence that the jury was exposed to extraneous information, there can be no basis for concluding that the jury's impartiality or verdict was somehow affected. Accordingly, the trial court did not abuse its discretion by denying McBee's motion for mistrial.

*McBee*, 2017 WL 1929816, at *5.

The Michigan Court of Appeals' decision was neither an unreasonable application of federal law nor did it contravene clearly established Supreme Court precedent or the facts. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial "by an impartial jury." U.S. Const. amend. VI. This guarantee requires a jury to arrive at its verdict "based upon the evidence developed at the trial." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

Due process, however, "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "'When a trial court is presented with evidence that an extrinsic influence has reached the jury which has a

reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information actually was on that jury.'" *Ewing v. Horton*, 914 F.3d 1027, 1030 (6th Cir. 2019) (quoting *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir. 1999), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000)). A state court's findings regarding juror partiality are questions of fact that are presumptively correct under 28 U.S.C. § 2254(d). *See Phillips*, 455 U.S. at 218 (citing *Sumner v. Mata*, 449 U.S. 539, 551 (1981)).

Under the Supreme Court's decision in *Remmer v. United States*, it is clearly established that "a trial court, faced with an indication of jury bias, must conduct 'a hearing with all interested parties permitted to participate.'" *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005) (quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954)); *see also Phillips*, 455 U.S. at 215 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). Although a defendant "must do more than simply raise the possibility of bias" to be entitled to a *Remmer* hearing, "a 'colorable claim of extraneous influence'" is sufficient. *Owens*, 426 F.3d at 805 (quoting *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999)). Once the defendant raises a colorable claim of extraneous influence, the trial court "must hold a *Remmer* hearing 'to afford the defendant an opportunity to establish actual bias.'" *United States v.*

21

*Lanier*, 870 F.3d 546, 549 (6th Cir. 2017) (quoting *Davis*, 177 F.3d at 557). "Yet a *Remmer* hearing is not necessary in every instance of possible unauthorized third-party contact." *Id.* (citing *Davis*, 177 F.3d at 557). "[A]n allegation of an unauthorized communication with a juror requires a *Remmer* hearing only when the alleged contact presents a likelihood of affecting the verdict, such as when the allegation involves claims of intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *Id.* (citation modified).

The Court agrees that McBee has failed to establish a factual predicate for his juror-misconduct claim. McBee has neither offered to the state courts, nor to this Court, the substance of the text messages allegedly sent from the juror. Moreover, because the crux of the claim concerns only text messages sent *from* the juror, he has not shown that the juror *received* any extraneous information that would have affected the juror's impartiality or the jury's verdict. Even considering Raderstorf's affidavit, McBee has raised only the mere "possibility of bias" and has not raised a colorable claim of extraneous influence. For these reasons, McBee is not entitled to a *Remmer* hearing, nor is he entitled to habeas relief on this claim.

### E. Trial Error - Juror Bias

Next, McBee contends that he was deprived of his right to an impartial jury because the trial court failed to inquire into the depth of the acquaintance between Juror 14 and the witness, Raderstorf. He

brings a related ineffective assistance of counsel claim for allowing the juror to remain on the panel. McBee raised these claims on collateral review. The trial court rejected the claims, stating:

> Here, the record shows that during trial, the juror in seat 14 revealed that she had not recognized Raderstorf's name when it originally had been listed by defense counsel at the beginning of trial. However, when Raderstorf testified, the juror recognized her face. Raderstorf also indicated that she recognized the juror. She also indicated that they both worked at a childcare facility. Defense counsel indicated that she did not have any objection to the juror remaining on the panel if the juror indicated that she could still be fair. Outside the presence of the jury, the court questioned juror 14. The juror indicated that her recognition of the witness did not inhibit her from following the court's instruction to be fair and impartial. Defense counsel did not request the juror's removal. The juror was instructed by the court to not discuss this issue with other jurors.
>
> Defendant recognizes that this court questioned juror 14 concerning Raderstorf and quotes extensively from the record. However, defendant contends that the juror's statement that she could be fair and impartial regardless of her acquaintance was not enough. Defendant claims an evidentiary hearing is required to determine whether defendant was subject to a trial before a partial or unfair jury. Furthermore, the record shows that all the jurors swore an oath to render a true verdict and to do so solely on the evidence introduced and in accordance with the court's instructions. Additionally, the court instructed the jury numerous times to decide the case based only on the evidence admitted during trial. Jurors are presumed to follow a trial court's instructions. *People v Breidenbach*, 489 Mich. 1, 13; 798 NW2d 738 (2011). Therefore, defendant is not entitled to relief from judgment on this basis.

* * *

> Defendant argues that trial counsel was ineffective acquiescing to the continued service of juror 14 and for failing to inquire further into the relationship between juror 14 and witness Raderstorf. However, defense fails to explain what further inquiry defense counsel should have made or how it would have made a difference in the outcome. Therefore, defendant has failed to rebut the presumption of effective assistance or establish the factual predicate for his claim. Moreover, the record shows that the court questioned the juror. Defense counsel is not required to make futile motions. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2002). Therefore, defendant is not entitled to relief from judgment on this basis.

ECF No. 21-20, PageID.1250–51.

The trial court's decision was neither an unreasonable application of federal law nor the facts. As discussed, a state court's findings regarding juror partiality are questions of fact that are presumptively correct under 28 U.S.C. § 2254(d). *See Phillips*, 455 U.S. at 218. There is nothing in the state-court record that suggests the trial court's finding that the juror could remain unbiased despite her recognition of Raderstorf was in error. The trial court thoroughly questioned the juror and was satisfied with her responses indicating that she could follow the court's instructions and remain impartial. For instance, the trial court asked: "Is there anything … about that recognition or your familiarity that would in any way affect your ability to be fair and impartial?" ECF No. 21-12, PageID.1052. The juror answered, "No." *Id*. When the court asked if the juror could continue to follow the court's instructions, she

24

responded, "Yes." *Id.* McBee fails to offer any evidence to overcome the presumption that the juror acted in accordance with trial court's instructions. *See Penry*, 532 U.S. at 799. Nor has he shown that further inquiry would have revealed any other bias.

Additionally, McBee fails to show trial counsel was ineffective for allowing the juror to remain on the panel. Because the Court has rejected the merits of McBee's underlying claim of error, he cannot show that trial counsel was ineffective. A lawyer will not be found ineffective for failing to advance a futile or meritless argument. *Downs v. United States*, 879 F.3d 688, 691 (6th Cir. 2018); *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017). McBee is not entitled to habeas relief on this claim.

### F. Ineffective Assistance of Appellate Counsel

Lastly, McBee argues that his appellate counsel was ineffective for failing to raise the claim concerning the trial court's deficient inquiry into the juror's acquaintance with Raderstorf on direct appeal. McBee raised this claim in his motion for relief from judgment filed with the state trial court. The trial court denied the motion, noting that appellate counsel was not ineffective for failing to raise a meritless claim on appeal. ECF No. 21-20, PageID.1252.

The trial court's decision was a reasonable application of *Strickland*. Appellate counsel cannot be constitutionally ineffective for failing to make a meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th

Cir. 2010); *see also Cowans v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011) ("The standard for ineffective assistance of appellate counsel mirrors the one governing the performance of trial counsel."). McBee is not entitled to federal habeas relief on this ground.

## IV.   CONCLUSION

For the above reasons, McBee's petition for a writ of habeas corpus is **DENIED**. The Court further finds that reasonable jurists would not debate this Court's resolution of McBee's claims, so issuance of a certificate of appealability is also **DENIED**. *See Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000). Further, McBee is **GRANTED** leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

This case is **DISMISSED WITH PREJUDICE**. This is a final order that closes this case.

**SO ORDERED**.

  _s/Terrence G. Berg_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  October 7, 2025